UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:06CV-98-R

FURMANITE AMERICA, INC.                                                                              PLAINTIFF

v.

PRECISION PUMP AND VALVE SERVICE, INC., et al.                              DEFENDANTS

### OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Dkt. # 3). Defendants responded (Dkt. Nos. 12 and 13), and a hearing was held in open court on February 28, 2006. For the reasons below, the Court **DENIES** Plaintiff's Motion.

### BACKGROUND

On December 31, 2005, Plaintiff Furmanite America, Inc. ("Furmanite") purchased a division of a Louisville, Kentucky company named FlowServe Corporation ("FlowServe") that was engaged in the sale and service of safety valves used by large industrial companies in various industries. One line of valves sold and serviced by FlowServe was the "Consolidated" line, manufactured by Dresser Industries, Inc. ("Dresser"). In order to distribute its Consolidated line, Dresser uses an exclusive distribution system under which it enters into agreements with various companies like FlowServe to assemble, sell and service the valves, and gives that company exclusive rights to do so within certain territory. These companies are referred to as "Green Tag Centers" and the agreements "Green Tag Center Agreements." On February 1, 2006, Furmanite received a letter from Dresser notifying it that Dresser was terminating the Green Tag Center Agreement effective March 3, 2006. The Green Tag Center Agreement

constituted approximately $3,000,000.00 of FlowServe's $5,000,000.00 yearly sales.

On Thursday, February 2, 2006, Furmanite notified its employees of Dresser's letter. It also discussed with them the impact of the termination on the future of the company, including apparently discussing its negotiations with one of Dresser's competitors to replace the lost business. On that same day, Dresser notified Defendants Precision Pump and Valve Service, Inc. ("Precision") that it would be awarded the Green Tag Center Agreement for the territory previously serviced by FlowServe. Precision is a company located in West Virginia that is a Green Tag Center for that area; it previously had no presence here in Kentucky. Precision's then-current workforce was apparently not sufficient to service the contract, and Precision contacted Defendant Billie Birge, then a Quality Control Specialist at Furmanite, as well as several other Furmanite employees to discuss the possibility of their leaving Furmanite to work for Precision. That evening, several principals of Precision met with several of the then-Furmanite employees; on Sunday, February 5, 2006, another meeting was held with more of the then-Furmanite employees. The next day, Monday, February 6, 2006, seventeen of the twenty employees working at the Furmanite office in Louisville ("Former Employees") tendered resignations to that office. Those employees are the individual defendants in this case.

## STANDARD

To determine whether to grant Plaintiff's preliminary injunction, the Court must consider: "(1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). "None of these factors, standing alone, is a prerequisite to relief; rather, the court should

balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir.1996). In the context of the request for temporary restraining order, the issue of irreparable harm takes on special importance. *First Technology Safety Sys., Inc. v. Depinet*, 11 F.3d 641 (6th Cir. 1993).

## ANALYSIS

Furmanite's complaint alleges eleven different causes of action against Precision and the Former Employees. They are as follows:

(1) Violation of 15 U.S.C. § 1, the Sherman Act;

(2) Misappropriation of trade secrets in violation of KRS § 365.880;

(3) Interference with business relations;

(4) Interference with contractual relations;

(5) Usurpation of corporate business opportunities;

(6) Employee raiding;

(7) Unjust enrichment;

(8) Trade disparagement;

(9) Breach of fiduciary duties;

(10) Unfair competition; and

(11) Breach of contract.

Furmanite seeks a temporary restraining order that, broadly, prohibits the Defendants and their agents from competing with Furmanite and prevents Precision from employing the Employee Defendants and other former Furmanite employees. On the basis of the information before the Court at this time, the Court believes that Plaintiff has not met the burdens it carries in seeking the TRO and the preliminary injunction.

As to the Sherman Act violation, Furmanite asserts that the actions of Precision and the

Employee Defendants are in violation of the Sherman Act in that they constitute a "conspiracy ... in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Specifically, Furmanite argues that these actions amounted to unfair competitive practices designed to drive it out of the market and therefore decrease the overall level of competition. Furmanite argues that these actions constitute a *per se* violation of the Sherman Act, obviating the need for the full "rule of reason" inquiry into the nature, extent and degree of their effect on the market.

As an initial matter, the Court notes that "special concern must be given to finding antitrust violations for hiring personnel away from competitors. Courts should be careful not to impede the ability of the employee to market his or her skills." *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924 (4th Cir. 1990) (*citing* 3 Areeda & Turner, *Antitrust Law*, § 738d (1978)). Further, the Court notes that, as our sister court observed in *Cutters Exchange, Inc. v. Durkoppwerke GmbH*, the significant weight of the authority among the various circuit courts indicates that unfair competition claims should not be considered *per se* violations of the Sherman Act. 1986 WL 942, *4 (M.D.Tenn. 1986) (collecting cases). Furmanite contends that the "extreme" nature of the acts in question overcome these considerations; however, on the facts currently in the record, the Court disagrees. Therefore, Furmanite has not demonstrated a likelihood of success on this claim sufficient to warrant the grant of equitable relief.

Similarly, the Court finds that Furmanite has not demonstrated a likelihood of success on its claims that the Defendants misappropriated its trade secrets. The facts currently in the record indicate that the information Furmanite seeks to protect is not protected by the Kentucky Uniform Trade Secrets Act (KUTSA) because Furmanite has not yet clearly established that they are "not readily ascertainable by proper means by ... other persons who can obtain economic value from its disclosure or use." KRS 365.880(4). The information Furmanite references is

apparently information gained about its customers and the businesses of those customers in the course of the Employee Defendants' employment with Furmanite. Without more evidence, the Court is not convinced that Furmanite has demonstrated a likelihood that this information would be protected by the KUTSA.

It is not clear that the facts support a *per se* violation of the Sherman Act. The employees range from technicians to sales representatives to an administrative assistant. They are mostly blue collar workers with good technical skills. None of them had signed a non-compete agreement with Furmanite. Apparently there were confidentiality agreements in place that imposed certain duties while they were employed. Furmanite argues that the employee handbook extends these duties past employment. As noted, at this stage of discovery it is uncertain what trade secrets these employees possessed, and the existence or extent of any fiduciary obligation is also uncertain. Discovery may support Furmanite's claim; however, at this juncture the Plaintiff has not successfully established a likelihood of success on its claims.

For these reasons, the Court **DENIES** Furmanite's Motion for Temporary Restraining Order and Preliminary Injunction, with leave to refile the motion as the evidence develops.

**IT IS SO ORDERED**.